Good morning. May it please the Court, Jagdeep Sekhar on behalf of the petitioner Talita Popa. Your Honors, Ms. Popa petitions this Court because she too is challenging an in absentia order by the agency based on her failure to appear at a removal hearing before the Office of the Immigration Judge in Nevada. Ms. Popa's case presents two issues. The first issue is one of statutory construction of whether or not the immigration judge has the authority to remove a noncitizen such as Ms. Popa based on notice that does not include or specify the time and place of a hearing and in addition presents instructions regarding how the noncitizen is to keep the immigration court apprised of her address but does so in a document that assumes that notice of the time in the hearing has been presented. The second issue is if assuming the immigration judge did have the statutory authority to order Ms. Popa removed in absentia, whether or not that exercise of statutory authority complied with due process. In order for an immigration judge to have the authority to remove a noncitizen removed in absentia, written notice has to have been provided in accordance with Section 239A.1. And the two subsections that concern us in this case are subsection A1F and A1G. And I would like to address A1G first. A1G requires that the time and place at which the proceedings will be held should be in the notice to appear. And I'm going to acknowledge that that's not the case. Kennedy. Well, counsel, wait a minute. Take a look at ACFR 1003.18. Doesn't that allow the IJ to give a notice to appear and then supplement that with a time and place notice? Yes, Your Honor. And our position is that under Chevron, that regulation conflicts directly with the statute. Okay. And the authority, I think what dictates that result is the previous statute that involved, that governed deportation proceedings. It appears that that regulation is a relic of the prior statute. If we look at 8 U.S.C. 1252B, that governed issuance of order to show causes. And in section, subsection A1, they did not, the statute did not require that the time and place of the proceedings be in the order to show cause. It expressly was not stated. And then alternatively, what it did have in a separate subsection, subsection 2, it did allow for the notice to be in two separate documents. In other words, you could have an order to show cause, and then later on you can issue that, the hearing notice in a separate document. What Congress did was when they replaced the order to show cause with a notice to appear and removal proceedings replaced deportation, they made a requirement that the initial charging document include the time and place of the proceedings. And then in addition, they removed that alternative, the alternative of the charging document not having the time and place of the proceedings and the, and that it could be sent out in a separate document. Now, I understand that the Third Circuit, well, sorry, the Eighth Circuit and the Seventh Circuit, well, I think the Seventh Circuit case is a different issue, but certainly the Eighth Circuit addressing the argument I am making to this Court today found differently. But our position is the reason the Eighth Circuit reached its conclusion or the wrong conclusion is because the Eighth Circuit did not look at all at the previous statute. They did not, they did not appreciate in this decision, it does not discuss at all, that in fact that Congress was conscious of this, this practice of, or actually previously authorized the practice of the charging document being issued and then later there being a hearing notice, and Congress eliminated that practice by requiring the time and place in the notice to appear and Congress eliminating the subsection that, that allowed it to be in two separate documents. Congress could not have been more clear than it is. Let me ask you this. Is there anything unfair in the two-document process? And I understand that in this case it worked to your client's disadvantage. But I can understand a lot of cases where it may be to the alien's advantage to receive notice that you will have a hearing set by a later document. So that allows the alien to get counsel, to get prepared, to get ready. But getting it in one shot, saying, boom, is, seems like a harsher kind of treatment. Yarner, I don't think so, if I may. And the first thing is, I do think that's the reason why we have so many inoccentia hearings when we have faulty notice in the document. I think the certainty, as the BIA says in its own decisions, when a noncitizen, especially a pro se noncitizen, gets one of these hearing notices, they can't discern what is actually going on. And the only thing that really helps them and that gives them an opportunity to avoid an inoccentia order is having that certainty of a time and place, that universal language of having something scheduled, knowing where you're going at least and when you're supposed to be there. If you've got that, then at least you can show up. And then at that initial hearing, which is so important, that is where the immigration judge has the requirement to explain to the noncitizen what these proceedings are all about. So it gives the noncitizen a chance to hang their hat on. But counsel, aren't we foreclosed from accepting your argument by the case of DiBroda? DiBroda involved a two-step process. The question was whether it should have been given notice to the attorney both times or not, but it certainly involved a two-step process. And we found, as a court, that the two-step process was okay. So this panel sitting, there's only three of us, not 11 of us, not an NBANC panel. Can we go contrary to DiBroda? No, Your Honor. My reading of DiBroda is that DiBroda did not – DiBroda dealt with a situation where the initial notice did not include the time and place of the hearing. I agree, Your Honor. But it did not sanction that practice. And DiBroda is actually – I guess supports our second argument that I haven't reached yet. But I don't think DiBroda actually addressed the issue. Actually – Well, if you couldn't give notice in the two-step process, DiBroda would have come out the other way. No. DiBroda, they ruled in favor of these. But on that ground, you wouldn't have to reach the second question as to whether the notice was properly given to the attorney or not, because you'd say, well, the notice of time and place wasn't in the original NTA, so therefore the notice was defective. Your Honor, I think that in DiBroda, they addressed the issue whether or not the conflicting instructions with respect to whether or not the notice should be given to the attorney resulted in the notice being defective. I don't – this specific issue was not addressed whether or not – I agree with you there. So, yes, Your Honor. And then, I see I'm running out of time, but I would like to point out that the Immigration Service used in this case a template that was consistent with the statute that the time and place of the hearing would be in the statute and would be in the charging document. And if we look at the card 144, it addresses the requirement of subsection F that noticers should be advised of the requirements of the address, and if they don't provide an address, that they're going to be ordered removed in absentia if they don't get the notice. But you can start from the first sentence onwards of that failure to appear on section 144 warnings, and every sentence in it is either incorrect or it is confusing. And the very first sentence says, you are required to provide the INS in writing with your full mailing address and telephone number. Well, at that time, there was no INS at all. So even the first sentence is incorrect, and you can read on and on. You must notify the immigration court immediately by using form EOIR-33. Ms. Popa never got an EOIR-33. Whenever you change the address or telephone number during the course of the proceeding, you will be provided with a copy of this form, again, anticipating that there is a hearing where she'll be provided with this form. And it goes on and on. And at best, this is confusing. At worst, it is misleading. So it does not provide the type of notice under subsection F of 239 that the non-citizen should have had. And if this satisfies the requirements, then our position is that read altogether, the fact that Ms. Popa's pro se, she doesn't have notice of the time and place of her hearing, she's getting confusing instructions, that all this does not amount to due process. Thank you. You have used your time. Good morning. My name is Jesse Bless. I represent the Attorney General of the United States. It is the Attorney General's position in this case that the Petitioner received proper notice in accordance with the law. I specifically want to deal with the facts right out. Ms. Popa had applied for adjustment of status based on a marriage to a United States citizen. When she did so, she provided the government, which is required by law, her address. Her address, her mailing address was a P.O. Box number in Nevada. Pardon me, but the adjustment of status was on the basis that? That she was married to a United States citizen. Mr. Sansouci. I believe so. And that marriage, for whatever reason, he withdrew his sponsorship or his petition for a visa for the Petitioner. On the same day that happened, the now Department of Homeland Security served Ms. Popa with a notice to appear at the P.O. Box number that she had provided. She received that notice to appear. Fifteen days later, she moved to California. She never checked her P.O. Box again. She never forwarded her mail. And the subsequent notice of hearing, which was sent to her last known address, was presumably not received by her or however. Was it re-delivered to you? It was not. And that's a crucial fact, because the P.O. Box was still listed as her mailing address and presumably she had received a number of documents for whatever her regular mail to that address. And so the government was left unaware, and Ms. Popa made herself unreachable. There was no attorney of record. She made herself unreachable. And the facts of this case and the reason why I submitted Hader, and I respectfully submit that I wish I had submitted it sooner, that the facts of Hader in this case are mirror images of each other. In Hader, you had someone who received a notice to appear. He moved. He did not notify the government that he had moved. The government sent the notice of hearing to the last known address. He didn't receive it. He was ordered removed in absentia. The facts of this case demonstrate that the system in this case worked lawfully. In this case, she was first represented when? I'm not – I don't know if she was represented. I'm not speaking – I don't believe that the attorney – I'm just a little confused as to whether or not she actually had representation or not at one point in this. Not before – there was no notification. There was no attorney notice provided. I believe it was at the motion to reopen stage that she first submitted that she was represented. But at all times when she came into the United States, when she asked the government  in discussing her and complying with her obligation to keep the government informed of where she was and what relief may be available to her, she had listed her proper address. And I don't believe she was represented at that point. Mr. Bress, you agree that this – I'll call it the question of the two-step notice is an open issue in our circuit? Yes, I would. It's open, right? Never been decided. It's been – it's been discussed. There are a number of cases in the circuit that have touched upon it. But the exact issue, no. And that's the reason I submit that. However, no court has adopted the position advanced by the Petitioner in this case. And that doesn't – you know, the Seventh Day Circuit, the Attorney General feels is very persuasive in dealing with that. And it represents a common practice that has been the practice of the government for as long as immigration proceedings have evolved. Have any other circuits considered this issue of a two-step process? I believe the Fifth Circuit has as well. The Seventh and Eighth most recently. And the fact is the two-step process has really never been challenged, because as Justice Schroeder pointed out, it does provide time for aliens to digest the presentation if they so desire, or in some cases to say, well, I have this relief available to me that I've already applied for that is pending. And a number of these cases when you have maybe a marriage that's handled by a different department or agency, you know, they say, well, I shouldn't be in these proceedings and it allows just time, much in any other litigation. Are there any further questions? No. Thank you. Well, thank you very much. The Attorney General respectfully requests this Court to uphold the decision of the Board of Immigration Appeals. Thank you. Are there any questions? No. Thank you. Thank you. The case just already argued and submitted for decision.
judges: Schroeder, Tashima, Bea